676 N.E.2d 656 (1997)
175 Ill.2d 79
221 Ill.Dec. 853
In re P.S., a Minor (The People of the State of Illinois, Appellant,
v.
P.S., Appellee).
The PEOPLE of the State of Illinois, Appellant,
v.
John KIMERY, Appellee.
The PEOPLE of the State of Illinois, Appellant,
v.
Roderick TURNER, Appellee.
Nos. 78910, 78944.
Supreme Court of Illinois.
January 30, 1997.
*657 James E. Ryan, Attorney General, Springfield, and David R. Akemann, State's Attorney, St. Charles (Norbert J. Goetten, William L. Browers and Lisa Anne Hoffman, the Office of the State's Attorneys Appellate Prosecutor, Elgin, of counsel), for the People.
Fred M. Morelli, Jr. of Morelli, Cook & Petersen, Aurora (Vincent Argento, of counsel), for appellee.
Amicus curiae Jack O'Malley, State's Attorney, Chicago (Renee Goldfarb, Thomas A. Konczal and Janet Powers Doyle, Assistant State's Attorneys, of counsel).
Justice MILLER delivered the opinion of the court:
One of the actions consolidated here, that involving defendant John Kimery, is before us on remand from the United States Supreme Court for further consideration in light of the Court's decision in United States v. Ursery, 518 U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).
The facts pertinent to this appeal are set forth in our previous opinion in this case, In re P.S., 169 Ill.2d 260, 214 Ill.Dec. 475, 661 N.E.2d 329 (1996), and require only brief restatement here. In cause No. 78910, Kimery was arrested on October 6, 1991, following an incident in which he was observed making a purchase of illicit drugs. On that occasion an Aurora police officer who was conducting surveillance saw Kimery stop his car and speak to two men, who then entered a nearby building. One of the men returned to Kimery's car several minutes later and got into the vehicle. The officer conducting the surveillance then saw the man hand Kimery a small white bag and receive money from Kimery in return. Police arrested the occupants of the vehicle and recovered a plastic bag from Kimery; the contents of the bag were later tested and were found to contain cocaine. Kimery was charged in the circuit court of Kane County with one count of unlawful possession of a controlled substance in violation of section 402(c) of the Illinois Controlled Substances Act (Ill.Rev.Stat.1991, ch. 56½, par. 1402(c)), a Class 4 felony.
*658 While the criminal charge was pending, the State filed an in rem forfeiture action against Kimery's vehicle, a 1982 Ford Mustang, pursuant to section 505(a)(3) of the Illinois Controlled Substances Act (Ill.Rev. Stat.1991, ch. 56½, par. 1505(a)(3)). The forfeiture complaint alleged the occurrence of the illegal drug sale described above. The complaint further alleged that Kimery was the registered owner of the vehicle and that the vehicle was subject to forfeiture because it had been used to facilitate the sale, receipt, possession, and concealment of a controlled substance.
Kimery entered an appearance in the forfeiture action as owner-claimant of the vehicle and requested the return of the automobile. Kimery acknowledged that he was present in the vehicle just before its seizure by authorities and admitted that a plastic bag was obtained from him, but he denied any knowledge of the contents of the bag and denied that the vehicle had been used to facilitate the alleged drug transaction. After a bench trial on May 26, 1992, the judge ordered Kimery's automobile forfeited to the State. The appellate court later affirmed the forfeiture order. People v. One 1982 Maroon Ford Mustang, 258 Ill.App.3d 127, 196 Ill.Dec. 440, 630 N.E.2d 137 (1994).
On August 13, 1992, after entry of the forfeiture judgment, Kimery moved to dismiss the pending criminal charge on grounds of double jeopardy. Kimery argued that forfeiture of the automobile constituted punishment for purposes of double jeopardy under the United States and Illinois Constitutions and that any further prosecution for the conduct that resulted in the forfeiture was therefore barred. The trial court took the motion under advisement, awaiting this court's opinion in People v. 1988 Mercury Cougar, 154 Ill.2d 27, 180 Ill.Dec. 323, 607 N.E.2d 217 (1992). Following our decision in that case, which found no double jeopardy bar under either the federal constitution or the state constitution to successive forfeiture actions and criminal prosecutions, Kimery pleaded guilty to the charge on April 12, 1993. Before Kimery could be sentenced, however, he moved to withdraw his guilty plea and requested dismissal of the charge, renewing his contention that successive forfeiture actions and criminal prosecutions for the same conduct are barred by double jeopardy. In support of the motion Kimery cited the United States Supreme Court's then-recent decision in Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which held that a forfeiture may constitute punishment under the excessive fines clause of the eighth amendment. Following a hearing, the trial judge denied Kimery's motion and sentenced him to one year's imprisonment. The judge stayed the sentence, however, pending the resolution of Kimery's interlocutory appeal of the double jeopardy question (see 145 Ill.2d R. 604(f)).
In an unpublished order the appellate court vacated the circuit court judgment, concluding that Kimery could not be prosecuted on the drug charge following the forfeiture of his automobile. The appellate court believed that forfeiture of the vehicle must be considered punishment and that a later criminal prosecution for the same conduct was therefore precluded by double jeopardy.
On the State's appeal, we affirmed the appellate court's disposition of Kimery's case. In re P.S., 169 Ill.2d 260, 214 Ill.Dec. 475, 661 N.E.2d 329 (1996). After reviewing the Supreme Court's decisions in Department of Revenue v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), we concluded that the prior forfeiture proceeding constituted punishment for purposes of the double jeopardy clause of the fifth amendment and that a subsequent prosecution of Kimery for the same underlying conduct was therefore barred. Our decision in 1988 Mercury Cougar preceded the Supreme Court's rulings in Kurth Ranch and Austin, and we believed that the later decisions necessitated a result different from that reached in our earlier case. With regard to Kimery, we therefore held that the subsequent criminal prosecution was barred by double jeopardy. We reached a different result in the two other cases consolidated in P.S.; we found that the criminal charges in those prosecutions were *659 for offenses distinct from the forfeiture actions and thus did not violate double jeopardy.
The State filed a petition for a writ of certiorari in Kimery's case. The Supreme Court granted the petition, vacated the judgment, and remanded the cause to us for further consideration in light of the Court's ruling in United States v. Ursery, 518 U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), which had been decided while the petition for certiorari was pending. Illinois v. Kimery, ___ U.S. ___, 116 S.Ct. 2577, 135 L.Ed.2d 1092 (1996). As we explain below, we now conclude that the forfeiture action at issue here does not constitute punishment for purposes of double jeopardy and therefore does not preclude, on double jeopardy grounds, Kimery's subsequent prosecution for the related drug offense.
The double jeopardy clause of the fifth amendment, made applicable to the states by the fourteenth amendment (Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)), protects against three perils: a second prosecution after acquittal, a second prosecution after conviction, and multiple punishments for the same offense (North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969)). At issue in this case is the third safeguard, that involving multiple punishments for the same offense. P.S., 169 Ill.2d at 272, 214 Ill.Dec. 475, 661 N.E.2d 329.
In Ursery, the Supreme Court reaffirmed the view that a civil in rem forfeiture action is not punishment for purposes of the double jeopardy clause and therefore may be pursued independently of a criminal action based on the same underlying misconduct. The Court noted that it had consistently held that the double jeopardy clause does not apply to such forfeitures because they do not impose punishment. United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam); Various Items of Personal Property v. United States, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931). The Court did not believe that a different result was compelled by its decisions in Department of Revenue v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), cases on which this and other courts had relied in finding a double jeopardy problem in successive forfeiture actions and criminal prosecutions. The Ursery Court noted that Halper and Kurth Ranch addressed double jeopardy questions involving civil penalties assessed against an individual (Halper) and a punitive state tax imposed on illicit drugs (Kurth Ranch); Austin considered the application of the eighth amendment's excessive fine clause to civil forfeitures. The Ursery court explained that nothing in those three decisions "purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause." Ursery, 518 U.S. at ___ _ ___, 116 S.Ct. at 2147, 135 L.Ed.2d at 567-68.
In determining whether the particular forfeiture actions involved in Ursery constituted punishment, the Court employed a two-part inquiry derived from 89 Firearms, which rejected a similar double jeopardy argument. First, the Court in Ursery asked whether Congress intended for the federal forfeitures at issue in those cases to be considered criminal or civil in nature. Next, the Court asked whether the forfeiture actions are so punitive in fact that they must be considered criminal, regardless of congressional intent. Ursery, 518 U.S. at ___, 116 S.Ct. at 2147, 135 L.Ed.2d at 568. After analyzing the statutory provisions at issue in those consolidated cases, the Court concluded that the forfeitures were civil in nature.
We must decide here whether the forfeiture provided by Illinois statute is civil or criminal in nature. This is primarily a question of statutory construction. Emerald Cut Stones, 409 U.S. at 237, 93 S.Ct. at 493, 34 L.Ed.2d at 443. Applying to the Illinois provisions the same two-part inquiry used in Ursery and 89 Firearms, we conclude that the forfeiture at issue in Kimery's case constitutes *660 a remedial civil sanction and does not bar a subsequent criminal prosecution.
We must first determine whether the legislature intended the forfeiture that preceded the instant prosecution to be civil or criminal in character. The property at issue in Kimery's case was subject to forfeiture under section 505(a)(3) of the Illinois Controlled Substances Act (Ill.Rev.Stat.1991, ch. 56½, par. 1505(a)(3)). Forfeiture proceedings involving property seized pursuant to that statute are governed by the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (Ill. Rev.Stat.1991, ch. 56½, pars. 1671 through 1684). See Ill.Rev.Stat.1991, ch. 56½, par. 1505(c); Ill.Rev.Stat.1991, ch. 56½, par. 1673. An examination of the provisions of the Forfeiture Act reveals that the General Assembly, in enacting the statute, intended to create a remedial civil sanction. Many of the civil features identified in the federal forfeiture statutes at issue in Ursery and 89 Firearms can also be found in the Illinois act. Turning to the first part of our inquiry, we believe that it is clear that the legislature intended actions brought pursuant to the Forfeiture Act to be remedial civil sanctions. As an initial matter, we note that the legislature has expressly stated that the proceedings under the Forfeiture Act are civil (Ill. Rev.Stat.1991, ch. 56½, par. 1672) and are designed to serve a remedial purpose (Ill. Rev.Stat.1991, ch. 56½, par. 1683).
Various procedural mechanisms provided by the Forfeiture Act further demonstrate the civil nature of those proceedings. The action is in rem and not in personam. Ill. Rev.Stat.1991, ch. 56½, pars. 1674, 1679. Furthermore, section 6 of the Forfeiture Act provides a summary, nonjudicial proceeding for certain categories of property if no claimant appears. Ill.Rev.Stat.1991, ch. 56½, par. 1676. The evidentiary burdens assigned by the Forfeiture Act also indicate that judicial proceedings under the statute are civil rather than criminal in character. For example, once the State establishes the existence of probable cause for forfeiture of the property, "the claimant has the burden of showing by a preponderance of the evidence that the claimant's interest in the property is not subject to forfeiture." Ill.Rev.Stat.1991, ch. 56½, par. 1679(G). In addition, a claimant urging that the property is exempt from forfeiture has the burden of establishing that defense by a preponderance of the evidence. Ill.Rev.Stat.1991, ch. 56½, par. 1678. These provisions demonstrate that the legislature intended to create a civil remedial sanction in the Forfeiture Act. See Ursery, 518 U.S. at ___ _ ___, 116 S.Ct. at 2147, 135 L.Ed.2d at 568-69; 89 Firearms, 465 U.S. at 363-64, 104 S.Ct. at 1105-06, 79 L.Ed.2d at 368-70.
Turning now to the second part of the test applied by the Supreme Court in Ursery and 89 Firearms, we consider whether proceedings brought under the Forfeiture Act "are so punitive in form and effect as to render them criminal" notwithstanding the legislature's intent to make them civil. We do not believe that the sanction is so punitive that it overcomes the civil attributes we have listed above. Proceedings under the Forfeiture Act serve important nonpunitive goals. As the Supreme Court noted in Ursery, requiring the forfeiture of property used to facilitate a drug violation encourages owners "to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes." Ursery, 518 U.S. at ___, 116 S.Ct. at 2148, 135 L.Ed.2d at 569. Moreover, as Ursery observes, in rem civil forfeiture has not traditionally been viewed as punishment, as that term is used in the double jeopardy context. A further indication that the proceeding is not criminal is found in the absence of a requirement of proof of scienter to sustain a forfeiture order; property may be subject to forfeiture even if no one appears to claim it (Ill.Rev.Stat.1991, ch. 56½, par. 1676). Ursery, 518 U.S. at ___, 116 S.Ct. at 2149, 135 L.Ed.2d at 570.
The Supreme Court's decision in Ursery also suggests that several potentially punitive aspects of the Forfeiture Act, as noted in our prior opinion in this case (P.S., 169 Ill.2d at 283, 214 Ill.Dec. 475, 661 N.E.2d 329), are not sufficient to overcome the essentially civil nature of the sanction. Thus, the statutory provision of an "innocent owner" defense to forfeiture actions (Ill.Rev.Stat. 1991, ch. 56½, par. 1678) is not fatal to the *661 conclusion that forfeiture is a remedial civil sanction. The avowedly deterrent aim of the statutory scheme (Ill.Rev.Stat.1991, ch. 56½, par. 1672) is also consistent with its civil nature. Finally, that the Forfeiture Act does not come into play until a criminal offense occurs does not defeat its civil purpose, for the legislature may impose both civil and criminal sanctions with respect to the same misconduct. Ursery, 518 U.S. at ___ _ ___, 116 S.Ct. at 2149, 135 L.Ed.2d at 570-71; see also 89 Firearms, 465 U.S. at 365-66, 104 S.Ct. at 1106-07, 79 L.Ed.2d at 370-71.
For the reasons stated, we believe that the legislature intended the forfeiture involved in Kimery's case to be merely a civil sanction, and we therefore hold that the subsequent criminal prosecution for the same underlying conduct does not implicate double jeopardy concerns. As we recognized in our earlier opinion in this case (P.S., 169 Ill.2d at 282, 214 Ill.Dec. 475, 661 N.E.2d 329), the Forfeiture Act is patterned after the federal forfeiture provisions found in 21 U.S.C. § 881 (Ill.Rev.Stat.1991, ch. 56½, par. 1672), and the General Assembly has stated that provisions of the Illinois statute should be interpreted in the same manner as are similar provisions of the federal statute. Ill.Rev.Stat.1991, ch. 56½, par. 1672. One of the forfeiture statutes at issue in Ursery was the federal counterpart to the Illinois act, so it is appropriate that we reach the same result here, in light of the legislature's intent that the Forfeiture Act receive the same construction. We thus conclude that the prior forfeiture of Kimery's automobile, used in the drug transaction that forms the basis for the criminal charge, does not preclude on double jeopardy grounds a subsequent prosecution of Kimery for that offense.
As a final matter, we turn briefly to the question whether the same result must obtain under the double jeopardy clause found in article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, § 10). As our earlier opinion in this case noted, although Kimery and the other parties in P.S. invoked the double jeopardy provisions of both the United States Constitution and the Illinois Constitution in the circuit court proceedings, they did not argue that the provision of the state constitution granted greater protection or required a different result. P.S., 169 Ill.2d at 271, 214 Ill.Dec. 475, 661 N.E.2d 329. Accordingly, the issue has been waived.
Moreover, we have previously interpreted our own state constitution's double jeopardy clause in a manner that is consistent with the United States Supreme Court's interpretation of the double jeopardy clause of the fifth amendment. See People v. Levin, 157 Ill.2d 138, 160, 191 Ill.Dec. 72, 623 N.E.2d 317 (1993). Notably, in People v. 1988 Mercury Cougar, 154 Ill.2d 27, 39, 180 Ill.Dec. 323, 607 N.E.2d 217 (1992), this court found no double jeopardy bar under either the United States Constitution or the Illinois Constitution to a forfeiture proceeding instituted after the defendant's conviction for conduct giving rise to the forfeiture. Nothing has occurred in the few years since that decision that would alter our analysis of the state constitutional guarantee, and thus we do not believe that the double jeopardy provision of the Illinois Constitution would warrant a different result in this case.
Brief comment should be made on the analysis proposed in one of the dissenting opinions. That opinion notes that, by the time of the 1970 state constitutional convention, most of the provisions of the Bill of Rights of the United States Constitution had been made applicable to the states. From that observation the dissenting opinion infers that the drafters of the Illinois Constitution must have intended the provisions of the state Bill of Rights to supplement the United States Constitution and to stand "as an additional protection" against governmental overreaching. 175 Ill.2d at 92, ___ Ill.Dec. at ___, 676 N.E.2d at 661 (Heiple, C.J., dissenting). The dissent apparently believes that the mere inclusion of a particular guarantee in the state Bill of Rights, without more, demonstrates that the provision means something different from the corresponding provision of the Bill of Rights of the United States Constitution. This approach leads to the conclusion that similar provisions of the federal and state constitutions mean different things, even though they are expressed in the same terms. Under this view, the Illinois *662 drafters did not adopt well-established meanings when they used familiar words and phrases but instead always meant something different. Notably, the dissenting opinion offers no citation to the proceedings of the 1970 constitutional convention in support of this novel theory.
In any event, this case is not an appropriate vehicle for a reassessment of the lockstep doctrine, for consideration of that question is unnecessary to our resolution of the present appeal. In People v. 1988 Mercury Cougar, 154 Ill.2d 27, 180 Ill.Dec. 323, 607 N.E.2d 217 (1992), this court rejected double jeopardy challenges, under both the federal and state constitutions, to the same legislation at issue here. More recently, in People v. Levin, 157 Ill.2d 138, 191 Ill.Dec. 72, 623 N.E.2d 317 (1993), this court held that the double jeopardy clause of our state constitution is to be construed in the same manner as the double jeopardy clause of the federal constitution. As we have already noted, the defendant did not previously argue in the circuit court or before this court that the double jeopardy provision of the state constitution should be interpreted more expansively than its federal counterpart.
Given the precedents of 1988 Mercury Cougar and Levin, this case is a curious forum in which to attempt to rekindle the debate over the interpretation of similar state and federal constitutional provisions. At the time of our original consideration of this appeal, we would have adhered to our earlier ruling in 1988 Mercury Cougar if we had not then believed that later decisions by the United States Supreme Court compelled a different result. With the meaning of those decisions clarified, we may now reinstate the holding of 1988 Mercury Cougar.
For the reasons stated, the judgment of the appellate court is reversed, and the cause is remanded to the circuit court of Kane County for further proceedings consistent with this opinion.
Reversed and remanded.
Justice HARRISON took no part in the consideration or decision of this case.
Chief Justice HEIPLE, dissenting:
I agree with the majority's conclusion that the fifth amendment of the United States Constitution, as interpreted by the United States Supreme Court, does not prohibit the prosecution of defendant Kimery for unlawful possession of a controlled substance following the forfeiture of his automobile to the State. Because I believe, however, that this determination does not end the inquiry we must conduct as Illinois' highest court, I respectfully dissent.
Article I, section 10, of the Illinois Constitution provides that "[n]o person shall * * * be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. The majority holds that this provision should be interpreted "in a manner that is consistent with the United States Supreme Court's interpretation of the double jeopardy clause of the fifth amendment." 175 Ill.2d at 89, 221 Ill.Dec. at 858, 676 N.E.2d at 661. I do not believe there is any persuasive justification for this holding. No one would suggest that the United States Supreme Court is bound to interpret provisions of the federal Constitution in a manner that is consistent with this court's interpretation of similar provisions of the Illinois Constitution. As I have stated previously, I believe the converse of such a suggestion to be equally insupportable. See People v. Mitchell, 165 Ill.2d 211, 233-35, 209 Ill.Dec. 41, 650 N.E.2d 1014 (1995) (Heiple, J., dissenting).
The Illinois Bill of Rights, contained in article I of the Illinois Constitution, was enacted by citizens of this state to protect themselves against unwarranted deprivation of their lives, liberty, and property by the state's government. The most recent version of the state constitution was ratified by the people in 1970. At that time, nearly all of the provisions of the United States Constitution's Bill of Rights had been construed by the United States Supreme Court to constrain state governments as well as the federal government. The Illinois Bill of Rights must therefore have been intended to serve as an additional protection against abuses of power by state government, supplemental to the safeguards provided by the United States Constitution. In light of this fact, I consider *663 it a dereliction of our duties as Illinois judges to delegate the function of interpreting our state constitution to the United States Supreme Court in the manner dictated by the majority. Rather, I believe that our oaths of office require "that the seven justices of this court * * * bring to bear on every important constitutional issue their independent resources of wisdom, judgment, and experience." People ex rel. Daley v. Joyce, 126 Ill.2d 209, 226, 127 Ill.Dec. 791, 533 N.E.2d 873 (1988) (Clark, J., concurring).
Applying this interpretive approach, I would hold that prosecuting defendant for unlawful possession of a controlled substance following the forfeiture of the automobile which was allegedly used to facilitate that offense violates article I, section 10, of the Illinois Constitution. Initially, I note that I disagree with the majority that defendant has waived this issue. Defendant contended, both in the circuit court and on appeal, that his prosecution violated the state constitution. Moreover, he was not afforded an opportunity to rebrief this argument upon remand of this case from the United States Supreme Court. I believe we therefore have a responsibility to address the issue.
The plain wording of section 10 prohibits putting a person in jeopardy twice for the same offense. The determinative question is thus whether the forfeiture of defendant's automobile to the state based on the vehicle's alleged use in facilitating a crime constitutes putting defendant in jeopardy for the commission of that crime. If it does, the state is barred from conducting a separate proceeding that also puts defendant in jeopardy for that crime.
I believe that the forfeiture which the state effected here clearly put defendant in jeopardy for an offense that was the same as that for which he was later prosecuted. The Illinois Constitution prohibits the undue deprivation not only of a person's life and liberty, but also of his property. Ill. Const. 1970, art. I, § 2. A proceeding brought to deprive a person of property based on his commission of a crime thus puts him "in jeopardy" for that crime just as surely as does a proceeding to deprive him of liberty. Likewise, it is clear that the two instances of jeopardy here were directed at the "same offense," because defendant was charged with committing only one illegal act, namely, unlawful possession of a controlled substance. But for the commission of this offense, there was no basis for the forfeiture, since "`[t]here is nothing even remotely criminal in possessing an automobile.'" Austin v. United States, 509 U.S. 602, 621, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488, 505 (1993), quoting One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170, 174 (1965).
I am not persuaded by the majority's arguments that a forfeiture such as this does not place a defendant in jeopardy for commission of an offense. First, I consider it irrelevant that the legislature may have intended the forfeiture to be civil rather than criminal in character. See 175 Ill.2d at 86, 221 Ill.Dec. at 856-57, 676 N.E.2d at 659-60. If an action by the government violates a constitutional prohibition, no amount of evidence manifesting the legislature's purportedly benign intent in authorizing that action can render the action constitutional. I consider it similarly irrelevant, in assessing the constitutionality of a statute under our state constitution, that the legislature has expressed an intention that statutory construction of the provision comport with the interpretation of similar statutes by the federal courts. See 175 Ill.2d at 88-89, 221 Ill.Dec. at 857-58, 676 N.E.2d at 660-61.
I am also not persuaded by the majority's assertion that "important nonpunitive goals" of the instant forfeiture immunize it from constitutional challenge under double jeopardy principles. See 175 Ill.2d at 87, 221 Ill. Dec. at 857, 676 N.E.2d at 660. In our prior opinion in this case, we held that a forfeiture of property violates double jeopardy if it serves even in part to punish the defendant. In re P.S., 169 Ill.2d 260, 282, 214 Ill.Dec. 475, 661 N.E.2d 329 (1996). We then proceeded to hold that various punitive aspects of the forfeiture, including its avowedly deterrent aim, its "innocent owner" defense, and its dependence on an underlying criminal violation, rendered it subject to double jeopardy constraints. P.S., 169 Ill.2d at 283, 214 Ill.Dec. 475, 661 N.E.2d 329. I believed this analysis to be persuasive at the time our *664 previous opinion was issued, and I remain persuaded despite the United States Supreme Court's contrary interpretation of the United States Constitution.
In People v. 1988 Mercury Cougar, 154 Ill.2d 27, 180 Ill.Dec. 323, 607 N.E.2d 217 (1992), this court held that the forfeiture of a vehicle in a proceeding separate from a prosecution for an underlying drug offense does not constitute double jeopardy. That opinion, however, interpreted federal precedent only, and did not specifically address the applicability of article I, section 10, of the Illinois Constitution. In People v. Levin, 157 Ill.2d 138, 191 Ill.Dec. 72, 623 N.E.2d 317 (1993), we refused to interpret article 1, section 10, more broadly than the United States Constitution's double jeopardy provision. Levin, however, dealt only with the application of double jeopardy principles to noncapital sentencing procedures. Levin, 157 Ill.2d at 160, 191 Ill.Dec. 72, 623 N.E.2d 317. I believe that striking the proper balance between law enforcement and individual liberty in the ever-escalating "war on drugs" now requires that this court exercise its independent judgment in declaring unconstitutional forfeitures conducted in the manner evidenced here. See People v. Mitchell, 165 Ill.2d 211, 233-35, 209 Ill.Dec. 41, 650 N.E.2d 1014 (1995) (Heiple, J., dissenting).
Because I believe that defendant has been twice put in jeopardy for the same offense in violation of the Illinois Constitution, I would affirm the judgment of the appellate court.
Justice NICKELS joins in this dissent.
Justice NICKELS, also dissenting:
In light of the United States Supreme Court's decision in United States v. Ursery, 518 U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), I agree with the majority's conclusion that the double jeopardy clause of the United States Constitution does not forbid Kimery's criminal prosecution. Nonetheless, I believe Kimery is protected from prosecution under our state constitution's double jeopardy clause (Ill. Const. 1970, art. I, § 10).
We are bound to follow the United States Supreme Court's decisions on matters of federal constitutional law. However, the obligation to apply those decisions when interpreting parallel provisions of our state constitution is one that this court has imposed upon itself under the so-called "lockstep doctrine." Under this doctrine, courts apply decisions of the United States Supreme Court based on federal constitutional provisions to the construction of comparable provisions of the state constitution unless the language of the state constitution or debates and committee reports of the constitutional convention show that the framers intended a different construction. People v. DiGuida, 152 Ill.2d 104, 118, 178 Ill.Dec. 80, 604 N.E.2d 336 (1992); see also People v. Mitchell, 165 Ill.2d 211, 217, 209 Ill.Dec. 41, 650 N.E.2d 1014 (1995). Thus, the determination whether to follow United States Supreme Court precedent depends on a comparison of the state and federal constitutions; the quality of the reasoning underlying the Court's decisions plays no role in the calculus.
I believe the time has come to reconsider the lockstep approach in this respect. Where a provision of the state constitution was intended to have the same meaning as a federal constitutional provision, decisions of the United States Supreme Court are entitled to consideration. However, examination of the reasoning behind those decisions should not categorically be foreclosed. I would follow the approach suggested by Justice Clark in his concurrence in People ex rel. Daley v. Joyce, 126 Ill.2d 209, 127 Ill.Dec. 791, 533 N.E.2d 873 (1988):
"[A]s to our State constitutional provisions, Federal precedents are not stare decisis. They are persuasive and not determinative. Where their reasoning persuades us, we should follow them. Where they do not, we should not." Joyce, 126 Ill.2d at 225, 127 Ill.Dec. 791, 533 N.E.2d 873 (Clark, J., concurring).
I dissent not because I believe the state and federal double jeopardy provisions necessarily have different meanings. Rather, I dissent because I am convinced that the Court's decision in Ursery fails to give the double jeopardy clause its proper effect, and in interpreting our state constitution, this court is not obliged to make the same *665 error. Ursery is premised upon the fanciful notion that in an in rem civil forfeiture proceeding, it is the seized property that is punished rather than the owner of the property. See Ursery, 518 U.S. at ___, 116 S.Ct. at 2153, 135 L.Ed.2d at 576 (Stevens, J., concurring in part & dissenting in part). Justice Stevens' partial dissent in Ursery persuasively demonstrates that the majority opinion in that case represents an abrupt and unwarranted departure from the Court's prior double jeopardy jurisprudence. See Ursery, 518 U.S. at ___ - ___, 116 S.Ct. at 2152-63, 135 L.Ed.2d at 574-89. (Stevens, J., concurring in part & dissenting in part). I am convinced that our original opinion in this case, In re P.S., 169 Ill.2d 260, 214 Ill.Dec. 475, 661 N.E.2d 329 (1996), properly applied the applicable double jeopardy principles and reached the correct result. For purposes of our state constitution, I would adhere to the analysis in our original opinion.
For the foregoing reasons, I respectfully dissent.
Chief Justice HEIPLE joins in this dissent.